IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIE BOYKINS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:17-CV-571-BT |
| | § | |
| NANCY A. BERRYHILL, Acting | § | |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Willie Boykins brings this action for judicial review of the final decision of the Acting Commissioner of the Social Security Administration (the "Commissioner") denying his claims for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, pursuant to Title 42, United States Code, Section 405(g). For the following reasons, the final decision of the Commissioner is REVERSED, and this case is REMANDED for proceedings consistent with this Memorandum Opinion and Order.

BACKGROUND

On April 26, 2013, Plaintiff filed his initial claim alleging that he is disabled due to a heart attack. Tr. 118 [ECF No. 13-5]. After his application was denied initially and upon reconsideration, a hearing was held on June 23, 2015, in Dallas, Texas, before Administrative Law Judge Donald R. Davis (the "ALJ"). Tr.

1

95 [ECF No. 13-4]. Plaintiff was born on April 2, 1955 and was 60 years old at the time of the June 23, 2015 hearing. Tr. 95 & 118. Plaintiff has past work experience as a security guard. Tr. 285 [ECF No. 13-8]. On August 11, 2015, the ALJ issued his decision finding that Plaintiff has not been under a disability as defined in the Social Security Act from his alleged onset date of March 31, 2013 through the date of the ALJ's decision. Tr. 87 [ECF No. 13-3].

The ALJ stated that he agreed with the Disability Determination Services consultants that Plaintiff does not have an impairment or a combination of impairments that met or medically equaled the severity of one of the listed impairments in Title 20, Code of Federal Regulations, Part 404, Subpart P, Appendix 1. Tr. 79 [ECF No. 13-3]. The ALJ determined that Plaintiff had the residual functional capacity ("RFC") for the following: (1) lift or carry 20 pounds occasionally and 10 pounds frequently; (2) stand or walk for 6 hours in an 8 hour workday; (3) sit for 6 hours in an 8 hour workday; (4) attend and concentrate for 2 hour periods; (5) respond appropriately to change in routine work settings; and (6) not engage in fast pace, assembly line work. Tr. 81 [ECF No. 13-3]. The ALJ determined that Plaintiff was able to perform his past relevant work as a security guard, because this work does not require the performance of work-related activities precluded by Plaintiff's RFC. Tr. 87 [ECF No. 13-3]. Plaintiff appealed the ALJ's decision to the Appeals Council, and on January 9, 2017, the Appeals

Council affirmed the ALJ's decision. Tr. 1 [ECF No. 13-3]. Plaintiff filed this action in the District Court on February 28, 2017. Compl. [ECF No. 1].

LEGAL STANDARDS

A claimant must prove that he is disabled for purposes of the Social Security Act to be entitled to social security benefits. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Act is "the inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are that:

(1) an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings;

(2) an individual who does not have a "severe impairment" will not be found to be disabled;

(3) an individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors;

(4) if an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" will be made; and

(5) if an individual's impairment precludes the individual from performing the work the individual has done in the past, other factors including age,

3

> education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990); 20 C.F.R. § 404.1520(b)-(f)). The burden of proof lies with the claimant to prove disability under the first four steps of the five-step inquiry. *Leggett*, 67 F.3d at 564. The burden of proof shifts to the Commissioner at step five of the inquiry to prove that other work, aside from the claimant's past work, can be performed by the claimant. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989)).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standards were utilized. *Greenspan*, 38 F.3d at 236 (citing 42 U.S.C. §§ 405(g), 1383(c)(3)). An "ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ." *Corpany v. Colvin*, 2014 WL 1255316, at *9 (N.D. Tex. Mar. 26, 2014) (citing *Dollins v. Astrue*, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009)). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be

4

more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does "not reweigh the evidence, try the issues *de novo*, or substitute" its own judgment, but rather scrutinizes the record as a whole to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

"Absent an error that affects the substantial rights of a party, administrative proceedings do not require 'procedural perfection.'" *Wilder v. Colvin*, 2014 WL 2931884, at *5 (N.D. Tex. June 30, 2014) (quoting *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)). "The ALJ is not required to discuss every piece of evidence in the record nor must the ALJ follow formalistic rules of articulation." *Hunt v. Astrue*, 2013 WL 2392880, at *7 (N.D. Tex. June 3, 2013) (citing *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005)); *see also Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) ("That [the ALJ] did not follow formalistic rules in her articulation compromises no aspect of fairness or accuracy that her process is designed to ensure."). "Procedural errors affect the substantial rights of a claimant only when they 'cast into doubt the existence of substantial evidence to support the ALJ's decision.'" *Wilder*, 2014 WL 2931884, at *5 (quoting *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)). "Remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error." *Id.* (citing *January v. Astrue,* 400 F. App'x 929, 933 (5th Cir. 2010)).

ANALYSIS

Plaintiff argues that the ALJ erred in failing to consider the factors set forth in 20 C.F.R. § 404.1527(c)[1] ("Section 404.1527(c)") before declining to give any weight to the opinion of his treating physician Dr. Linus Miller, which contradicts the ALJ's RFC finding. Pl.'s Br. 5-8 [ECF No. 17]. The Commissioner concedes that the limitations assessed by Dr. Miller "essentially render[s] Boykins disabled," but contends that "the evidence does not substantiate those

---

[1] Sections 404.1527(c) and 416.927(c) state in part the following:

(c) How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
    (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
    (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources . . . . When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.
        (i) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.
        (ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories.
    (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.
    (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
    (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
    (6) Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion.

20 C.F.R. §§ 404.1527(c), 416.927(c).

limitations." Def.'s Br. 2 [ECF No. 20]. The Commissioner points out that the ALJ acknowledged that on June 21, 2013, Plaintiff's treating cardiologist, Dr. Abraham Ariyo conducted a Doppler study that showed an ejection fraction of 50% and that most valves were without regurgitation and normal. Def.'s Br. 3 (citing Tr. 78 [ECF No. 13-3]; Tr. 425-29 [ECF No. 13-9]). The Commissioner points out that Dr. Ariyo released Plaintiff to return to work without any restrictions and argues that the opinion of a treating specialist carries more weight than that of a non-specialist. Def.'s Br. 3-4 (citing Tr. 438 [ECF No. 13-9]; Tr. 450 & 473 [ECF No. 13-10]; *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)). The Commissioner further argues that the ALJ was not required to analyze the Section 404.1527(c) factors, because this case contains competing first hand evidence, including treatment records showing normal physical findings and that Plaintiff retained the ability to work with additional limitations that accommodate his cardiac impairment. Def.'s Br. 5 [ECF No. 20].

> In *Newton v. Apfel*, the Fifth Circuit stated the following:
>
> [A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527[(c)]. . . . This court [] holds that an ALJ is required to consider each of the § 404.1527[(c)] factors before declining to give any weight to the opinions of the claimant's treating specialist. The ALJ failed to perform this analysis, which should be conducted on remand.

*Newton v. Apfel*, 209 F.3d 448, 453-56 (5th Cir. 2000). *See also Wilder*, 2014 WL 2931884, at *5 ("Although Dr. Rumalla examined Plaintiff, his opinions do not contradict the RFC assessments of Dr. Ruby as already discussed. Under the facts of this case, the ALJ was required to provide a detailed analysis of the six factors."); *Yearout v. Astrue*, 2010 WL 4860784, at *10 (N.D. Tex. Oct. 26, 2010) ("The ALJ here did not find as a factual matter, and based on competing first-hand evidence, that another doctor's opinion was more well-founded than Dr. Berger's opinion, or weigh Dr. Berger's opinion on disability against the medical opinion of other physicians who had treated or examined Plaintiff and had specific medical bases for a contrary opinion. . . . The ALJ was therefore required to perform the six-factor analysis outlined in 20 C.F.R. § 404.1527[] before rejecting Dr. Berger's opinion. . . . [T]he case must be remanded to the Commissioner for reconsideration of Dr. Berger's opinion under the factors set out in 20 C.F.R. § 1527[]."); *Gittens v. Astrue*, 2008 WL 631215, at *5 (N.D. Tex. Feb. 29, 2008) ("The court [] finds that the ALJ had a duty to explain why these medical opinions from a treating physician were rejected and to conduct the analysis required by 20 C.F.R. § 404.1527[(c)].").

The Commissioner's argument that the record contains competing first hand evidence, including treatment records, is not supported by the evidence. *See Thornhill v. Colvin*, 2015 WL 232844, at *10 (N.D. Tex. Dec. 15, 2014) ("The problem with the ALJ's RFC determination is, as Plaintiff argues, that the ALJ rejected any medical opinion addressing or touching on Plaintiff's condition's

8

effect on her ability to work and relied on progress notes that do not themselves address Plaintiff's work limitations."). The evidence pointed to by the Commissioner from Dr. Ariyo is a July 31, 2013 letter stating that Plaintiff's medical conditions were stable and that Plaintiff was cleared to return to work without restrictions. *See* Def.'s Br. 3 (citing Tr. 438, 450, 473). The same July 31, 2013 letter appears on three different pages in the record that the Commissioner cites. *See* Tr. 438, 450, 473. This letter from Dr. Ariyo does not controvert the detailed Medical Source Statement from Dr. Miller dated nearly nine months later on March 3, 2014. *See* Tr. 475-478. The ALJ noted that Dr. Miller also cleared Plaintiff to return to work on August 1, 2013, but that Dr. Miller subsequently identified Plaintiff's exertional limitations as less than sedentary in March of 2014. Tr. 78-79. The ALJ also noted that Dr. Miller's March 2014 assessment followed Plaintiff's angioplasty and stent placement that took place a week before on February 18, 2014, and that Plaintiff underwent these procedures after continuing to have problems with chest pain and shortness of breath. Tr. 77 & 79. While Plaintiff's condition may have improved since the February 18, 2014 procedures, the clearance to return to work in 2013 does not take into consideration Plaintiff's post angioplasty and stent placement condition.

Without a detailed analysis of the Section 416.927(c) factors, the Court is unable to state whether the ALJ would have come to a different conclusion had he given more consideration to Dr. Miller's opinion. *See Wilder*, 2014 WL 2931884, at *6 ("On the record before it, the Court cannot say that the failure to

conduct the detailed analysis is harmless error. Had the ALJ conducted that analysis, there is a realistic possibility that he would have given greater weight to the opinions of the treating physician . . . . There is also a realistic possibility that the ALJ would have sought clarification or additional evidence as contemplated by 20 C.F.R. § 404.1512(e)."). Because there is a realistic chance that the ALJ could have come to a different result, the Court concludes that the ALJ's decision is not supported by substantial evidence.[2]

## CONCLUSION

For the foregoing reasons, the final decision of the Commissioner is REVERSED, and this case is REMANDED for proceedings consistent with this Memorandum Opinion and Order.

SO ORDERED.

March 27, 2018.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

---

[2] The Court pretermits consideration of Plaintiff's alternative grounds for reversal as he can raise them before the ALJ on remand. *See* 20 C.F.R. § 404.983 (providing that when a case is remanded from federal court, the ALJ may consider any issues relating to the claim).